UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANUEL PANTOJA, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 1:17-cv-05598 |
| ICS CAPITAL, LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

**NOW COMES** Manuel Pantoja ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining of the Defendant ICS Capital, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, and violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FDCPA, TCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in the Northern District of Illinois, Defendant conducts business in the Northern District of Illinois, and a substantial portion of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

1

**PARTIES**

4. Plaintiff is a consumer and a natural person over 18-years-of-age who, at all times relevant, resided in the Northern District of Illinois.

5. Defendant ICS is a Texas corporation engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others. ICS uses mail, telephone, and credit reporting for the principal purpose of collecting debts from consumers on a nationwide basis, including consumers in the State of Illinois.

**FACTS SUPPORTING CAUSE OF ACTION**

6. In October 2001, Plaintiff opened a bank account with US Bank.

7. In October 2010, US Bank alleged that Plaintiff failed to deposit appropriate funds in his checking account. As a result, US Bank assessed fees and penalties against Plaintiff in the approximate amount of $1,000.00 ("subject debt").

8. Soon thereafter, US Bank charged off the remaining balance and sold the subject debt to HBLC, Inc. ("HBLC") for collections.

9. On February 25, 2013, Plaintiff and HBLC agreed to settle the subject debt in full with a monetary settlement in the amount of $1,200.00.

10. Plaintiff's liability on the subject debt was extinguished, thus terminating the business relationship with HBLC and any successor or assign, including Defendant.

11. On January 23, 2017, Plaintiff received a correspondence from Defendant advising him that his account has been assigned to Defendant for collections. The correspondence stated that Plaintiff is past due in the amount of $704.92 and that the original creditor is "US Bank-Overdraft."

12. Bewildered, Plaintiff immediately contacted Defendant to tell them that the subject debt was paid in full on February 25, 2013. The Defendant representative responded by insisting on Plaintiff to make a one-time payment to pay off the subject debt.

13. During that call, a Defendant representative threatened Plaintiff that if he did not pay the subject debt, Defendant would report the subject debt to each of the credit reporting agencies as being in collections.

14. From January 2017 through July 2017, Defendant sent Plaintiff dunning letters each month demanding payment on the subject debt. Each of the dunning letters instructed Plaintiff on how to make payments to Defendant, and included a payment coupon that stated "Detach and Return This Portion With Payment."

15. Defendant attempted to collect on the subject debt despite the fact it had actual knowledge that Plaintiff had previously paid the debt off in full.

16. In January 2017, Defendant also began placing collection calls to Plaintiff's cellular telephone ending in 4968.

17. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of this cellular telephone number. Plaintiff is and has always been financially responsible for this cellular telephone and its services.

18. Plaintiff *never* provided his cellular telephone number to Defendant or otherwise expressly consented to Defendant's phone calls.[1]

---

[1] Upon information and belief, Defendant obtained Plaintiff's cellular telephone number through a method known as "skip-tracing," whereby debt collectors obtain phone numbers by conducting inquiries upon consumer credit reports or other public record searches. According to Defendant's website, one of its main collection services it provides to its clients is "Skip-tracing." *See* http://www.ics-capital.com/collection-services/.

19. As soon as Defendant's calls began in January 2017, Plaintiff answered and advised Defendant that he has paid the subject debt in full and that it should cease all calls to his cellular phone.

20. Notwithstanding Plaintiff's requests that the calls cease, Defendant placed an average of 2 calls per week from January 2017 through the present day in an attempt to collect on the subject debt.

21. From January 2017 through the present day, Defendant placed or caused to be placed no less than 21 phone calls to Plaintiff's cellular phone in an attempt to collect on the subject debt.

22. From January 2017 through the present day, Plaintiff answered several calls from Defendant, and in each answered phone call, Plaintiff requested that Defendant's phone calls cease.

23. In the calls that Plaintiff answered, there would be an approximate 3 second pause between the time he said "hello," and the time that a live agent introduced them self as a representative of Defendant attempting to collect on the subject debt.

24. Moreover, in the calls that Plaintiff spoke to a live representative of Defendant, Plaintiff heard what sounded to be call center noise in the background of Defendant's calls.

25. Upon information and belief, Defendant placed its calls to Plaintiff's cellular telephone using a predictive dialing system, an automated telephone dialing system that is commonly used in the debt collection industry to collect allegedly defaulted debts.

26. Plaintiff's request that Defendant's phone calls cease fell on deaf ears and Defendant continued its phone harassment campaign.

**DAMAGES**

27. Despite having actual knowledge that Plaintiff satisfied the subject debt in full, Defendant brazenly sent dunning letters and placed collection calls to Plaintiff in an attempt to collect on the subject debt.

28. Concerned about the violations of his rights, Plaintiff sought the assistance of counsel to ensure that Defendant's collection efforts finally cease.

29. Plaintiff has expended time and incurred costs consulting with his attorneys as a result of Defendant's false, deceptive, and misleading collection efforts.

30. Plaintiff was unduly inconvenienced and harassed by Defendant's unlawful attempts to collect the paid subject debt and suffered emotional distress and mental anguish as Defendant's collection activities led him to believe that he was still liable on the subject debt.

31. Moreover, Defendant's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

32. The majority of Defendant's distracting phone calls to Plaintiff were placed during work hours and increased the risk of personal injury resulting from the distraction caused by the incessant phone calls.[2]

33. Defendant's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time, increased risk of personal injury resulting from the distraction caused by the phone calls, aggravation that accompanies unsolicited telephone calls, harassment, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of his telephone equipment and telephone

---

[2] Plaintiff is a full-time truck driver.

subscription services, the wear and tear caused to his cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

34. Concerned about the violations of his rights and invasion of his privacy, Plaintiff sought the assistance of counsel to permanently cease Defendant's collection efforts, incurring costs and expenses consulting with his attorneys.

### COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

35. Plaintiff restates and realleges paragraphs 1 through 34 as though fully set forth herein.

36. The Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

37. The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

38. Defendant is a "debt collector" as defined by §1692a(6) because its principal purpose is to collect debts and uses the mail and telephones to collect alleged delinquent consumer accounts.

39. Defendant used the mail and telephone to attempt to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

40. All of Defendant's mail and telephone communications to Plaintiff and regarding Plaintiff were made in connection with the collection of the subject debt.

41. Defendant violated 15 U.S.C. §§1692c(a)(1), d, d(5), e(2), e(8), e(10), f, and f(1), through its debt collection efforts on the subject debt.

    **a. Violations of FDCPA § 1692c**

42. Defendant violated §1692c(a)(1) when it continuously called Plaintiff after being notified to stop on several occasions. This repeated behavior of systematically calling Plaintiff's cellular phone over and over after he demanded that it cease contacting him was harassing and abusive.

6

Even after being told to stop contacting him, Defendant continued its onslaught of phone calls with the specific goal of oppressing and abusing Plaintiff into paying a subject debt that he previously paid in full.

43. Furthermore, Defendant has relentlessly called Plaintiff on no less than 21 occasions in less than 6 months. This volume of calls shows that Defendant willfully ignored Plaintiff's pleas with the goal of annoying and harassing him into submission.

44. Defendant was notified by Plaintiff that he was no longer liable to pay the subject debt and that its calls were not welcomed. As such, Defendant knew that its conduct was inconvenient and distressing to him.

    **b. Violations of FDCPA § 1692d**

45. Defendant violated §1692d by engaging in abusive, harassing, and oppressive conduct by relentlessly calling Plaintiff's cellular phone seeking immediate payment on the subject debt. Moreover, Defendant continued placing the relentless calls after Plaintiff demanded that the calls cease on numerous occasions.

46. Defendant violated §1692d(5) by causing Plaintiff's cellular phone to ring repeatedly and continuously in an attempt to engage Plaintiff in conversations regarding the collection of the subject debt with the intent to annoy, abuse, or harass Plaintiff. Specifically, Defendant placed or caused to be placed no less than 21 harassing phone calls to Plaintiff's cellular telephone, using an ATDS without his prior consent, with calls taking place on back to back days.

    **c. Violations of FDCPA § 1692e**

47. Defendant violated §1692e(2) when it falsely misrepresented the character, amount, or legal status of the subject debt. The subject debt was not owed at the time Defendant demanded

7

payment by virtue of the February 25, 2013 payment in full. Plaintiff no longer had any legal obligation to pay Defendant.

48. Defendant violated §1692e(8) by threatening to communicate patently false credit information to the credit reporting agencies that it knew, or should have known, to be false. Any information that Defendant threatened to report would be inaccurate and materially misleading because the subject debt was satisfied and therefore Plaintiff no longer had any obligations to pay Defendant. Defendant had actual knowledge that the subject debt was not owed because Plaintiff contacted it in January 2017 to put Defendant on notice that he has previously satisfied the subject debt.

49. Defendant violated §1692e(10) when it used false representations and/or deceptive means to collect and/or attempt to collect on the subject debt. The subject debt was not owed at the time Defendant demanded payment.

### d. Violations of FDCPA § 1692f

50. Defendant violated §1692f when it used unfair and unconscionable means to collect the subject debt. The subject account was not owed at the time Defendant demanded payment. Plaintiff did not have any legal obligation to pay Defendant. Instead, Defendant attempted to dragoon the Plaintiff into making a payment on a debt that he previously satisfied in full.

51. Defendant violated §1692f(1) by attempting to collect a debt that was uncollectible as a matter of law as the payment to HBLC satisfied all of Plaintiff's legal obligations regarding the collectability of the subject debt.

52. As an experienced debt collector, Defendant knew or should have known the ramifications of collecting on a debts that were previously satisfied in full.

8

53. Upon information and belief, Defendant systematically attempts to collect debts through harassing conduct and has no procedures in place to assure compliance with the FDCPA.

54. Upon information and belief, Defendant systematically places unsolicited and harassing debt collection calls to consumers in Illinois in order to aggressively collect debts allegedly in default to increase its profitability at the consumers' expense.

55. Upon information and belief, Defendant willfully attempts to collect satisfied debts to compel consumers to make payment on debts that are no longer owed.

56. As pled above, Plaintiff was severely harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff MANUEL PANTOJA respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
d. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

57. Plaintiff restates and realleges paragraphs 1 through 34 as though fully set forth herein.

58. Defendant repeatedly placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") or prerecorded or artificial voice without Plaintiff's prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

59. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

60. Upon information and belief, based on Defendant's lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used a predictive dialing system to place calls to Plaintiff's cellular telephone.

61. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

62. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

63. Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

64. Defendant violated the TCPA by placing no less than 21 phone calls to Plaintiff's cellular phone between January 2017 and the present day, using an ATDS without his prior consent.

65. Any prior consent, if any, was revoked by Plaintiff's verbal revocations. Specifically, Plaintiff verbally revoked consent to be called on his cellular phone on at least three separate occasions.

66. As pled above, Plaintiff was severely harmed by Defendant's collection calls to his cellular phone.

67. Upon information and belief, Defendant has no system in place to document and archive whether it has consent to continue to contact consumers on their cellular phones.

68. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

69. Defendant, through its agents, representatives, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

70. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per phone call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA triggers this Honorable Court's discretion to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff MANUEL PANTOJA respectfully prays this Honorable Court for the following relief:

a. Declare Defendant's phone calls to Plaintiff to be violations of the TCPA;
b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and
c. Awarding Plaintiff costs and reasonable attorney fees;
d. Enjoining Defendant from further contacting Plaintiff; and
e. Awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: July 31, 2017                                              Respectfully Submitted,

/s/ Marwan R. Daher                                               /s/ Omar T. Sulaiman
Marwan R. Daher, Esq. ARDC#6325465                                Omar T. Sulaiman, Esq. ARDC#6322837
*Counsel for Plaintiff*                                           *Counsel for Plaintiff*
Sulaiman Law Group, Ltd.                                          Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200                             2500 South Highland Avenue, Suite 200
Lombard, IL 60148                                                 Lombard, IL 60148
Telephone: (630) 575-8181 ext. 109                                Telephone: (630) 575-8181 ext. 108
mdaher@sulaimanlaw.com                                            osulaiman@sulaimanlaw.com